782 A.2d 960 (2001)
344 N.J. Super. 538
Edward F. PETIT-CLAIR, Plaintiff-Appellant,
v.
Christian E. NELSON and Phyllis E. Nelson, his wife, Glenn E. Larson, United States of America, Schenck, Price, Smith & King, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted September 24, 2001.
Decided October 29, 2001.
*961 Michael K. Fielo, West Orange, attorney for appellant, (Mr. Fielo, of counsel and on the brief).
Respondents did not file briefs.
*962 Before Judges HAVEY, BRAITHWAITE and COBURN.
The opinion of the court was delivered by HAVEY, P.J.A.D.
Defendants Christian and Phyllis Nelson retained plaintiff Edward F. Petit-Clair, Esquire, to represent their two corporations, Poseidon Associates, Inc. and Paulson Engineering, Inc. The corporations were plaintiffs in proceedings entitled Poseidon Assocs., Inc. and Paulson Eng., Inc. v. Industrial Crating and Rigging (Paulson litigation). During the litigation, defendants agreed to give plaintiff a mortgage on their personal residence to secure payment of legal fees incurred during the proceedings. At the conclusion of the litigation, defendants executed and delivered to plaintiff a mortgage in the amount of $41,299, securing payment of the legal fees.
When defendants defaulted, plaintiff filed a foreclosure complaint in the Chancery Division. After a bench trial, the trial court concluded that the mortgage was invalid. It held that since the mortgage was a "business transaction," plaintiff had an affirmative duty to advise defendants of the desirability to seek independent counsel, but failed to do so. See RPC 1.8(a). The trial court further concluded that there was no consideration to support the giving of the mortgage.[1] We affirm.
On March 10, 1988, plaintiff was retained by Poseidon Associates, Inc. and Paulson Engineering, Inc., to institute an action against Industrial Crating and Rigging, Inc. Defendants, Christian and Phyllis Nelson, are president and secretary of the corporations respectively. Christian executed a retainer agreement with plaintiff solely in his capacity as president of the two corporations.
A total of $8,000 was paid to plaintiff for services rendered. However, during the course of the Paulson litigation Christian and Phyllis, in their capacities as president and secretary of Paulson Engineering, executed a letter agreement with plaintiff dated June 17, 1989, in which they agreed to give plaintiff a security interest in Poseidon's equipment and in equipment owned by them personally. Further, both Christian and Phyllis agreed to give plaintiff a mortgage on their Kinnelon residence securing the amount of the legal fees due plaintiff. On September 27, 1989, the Nelsons executed and delivered the mortgage to plaintiff securing the legal fee debt.
The Nelsons failed to make payment on the mortgage. As a result, on August 15, 1997, eight years after execution of the mortgage, plaintiff filed a foreclosure action in the Chancery Division, Morris County. As noted, the trial court concluded that the mortgage was invalid because of plaintiff's failure to comply with RPC 1.8(a) by not advising defendants to seek independent counsel.
"[A]n attorney's freedom to contract with a client is subject to the constraints of ethical considerations" and the Supreme Court's supervision. Cohen v. Radio-Elec. Officers Union, 146 N.J. 140, 155, 679 A.2d 1188 (1996). Any transaction between an attorney and client is "subject to close scrutiny and the burden of establishing fairness and equity of the transaction rests upon the attorney." In re Gallop, 85 N.J. 317, 322, 426 A.2d 509 (1981); In re Nichols, 95 N.J. 126, 131, 469 A.2d 494 (1984). This is because "`[a]n attorney in his relations with a client is bound to the highest degree of fidelity and *963 good faith. The strongest influences of public policy require strict adherence to such a role of conduct.'" In re Nichols, supra, 95 N.J. at 131, 469 A.2d 494 (quoting In re Gavel, 22 N.J. 248, 262, 125 A.2d 696 (1956)). Consequently, an otherwise enforceable agreement between an attorney and client is invalid "if it runs afoul of ethical rules governing that relationship." Cohen, supra, 146 N.J. at 156, 679 A.2d 1188. In that situation, the lawyer is duty bound to "make sure that the client understands that the lawyer's ability to give undivided loyalty may be affected and must explain carefully, clearly, and cogently why independent legal advice is required." P & M Enter. v. Murray., 293 N.J.Super. 310, 314, 680 A.2d 790 (App. Div.1996) (holding that a "transaction between a lawyer and client is presumptively invalid").
RPC 1.8(a) provides:
A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless (1) the transaction and terms in which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in manner and terms that should have reasonably been understood by the client, (2) the client is advised of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent counsel of the client's choice on the transaction, and (3) the client consents in writing thereto.
[Emphasis added.]
By its very terms, the rule is mandatory; it provides that a lawyer "shall not" knowingly acquire a security or pecuniary interest adverse to the client unless the client is advised of the desirability of seeking independent counsel. Thus, the Supreme Court has found a violation of RPC 1.8(a) where the attorney loaned his client $40,000 to purchase a house and took back a mortgage without advising her to seek advice from an independent attorney. In re Humen, 123 N.J. 289, 297-99, 586 A.2d 237 (1991). Further, in In re Loring, 62 N.J. 336, 341-42, 301 A.2d 721 (1973), the Court did not hesitate to find a conflict when an attorney representing a client in a real estate sale asserted a fee lien on the closing proceedings and took back a mortgage on the client's new residence to secure payment of the fee, noting that the client received no independent legal advice in connection with the consequence of imposition of the lien.
Here, it is clear that defendants' mortgage on their personal residence given to plaintiff was a "security ... interest adverse to [the defendants]...." Consequently, plaintiff had the burden of demonstrating both that the terms of the mortgage were fair and reasonable and that he advised defendants of the desirability of retaining independent counsel. Plaintiff admitted that he never gave such advice. Had he done so, independent counsel may have convinced defendants not to execute the mortgage since, as the trial court aptly pointed out, on its face the retainer agreement provides that the legal fee debt was owed by the corporations, not by defendants personally. Implicit in the court's determination invalidating the mortgage was that, because of plaintiff's failure to comply with the mandatory dictate of RPC 1.8(a), the making of the mortgage in plaintiff's favor was unreasonable and unfair to defendants. We agree.
Plaintiff's argument that RPC 1.8(a) is inapplicable here because he represented the corporations, and not the defendants individually, is unavailing. All that is necessary is that the parties relate *964 "to each other generally as attorney and client. It is also clear that it is the substance of the relationship, involving as it does a heightened aspect of reliance, that triggers the need for the rule's prescriptions of full disclosure and informed consent." In re Silverman, 113 N.J. 193, 214, 549 A.2d 1225 (1988). It is undisputed that defendants and plaintiff related to each other as attorney and client. Defendants relied on plaintiff's guidance and advice. Indeed, plaintiff had previously represented Mrs. Nelson in an unrelated matter. Although Christian signed the retainer agreement only in his corporate capacity, the corporation themselves were creatures of the law which did not rely on the confidences which arose from the attorney/client relationship. See Aysseh v. Lawn, 186 N.J.Super. 218, 227, 452 A.2d 213 (Ch.Div.1982). Obviously, it was defendants personally who consulted with plaintiff and relied on his legal representation during the Paulson litigation, not the corporations. Moreover, every confidential communication from plaintiff to the corporations was in fact to defendants as individuals. Finally, it was defendants, not the corporations, whom plaintiff persuaded to pledge the equity in their personal residence to secure payment of the legal fee balance.
Affirmed.
NOTES
[1] We need not address the lack of consideration issue.